# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JAMES WALKER, | ) |
| Plaintiff, | ) |
| vs. | ) CASE NO. 05-824-DRH-PMF |
| MARVIN POWERS, et al., | ) |
| Defendants. | ) |

## REPORT AND RECOMMENDATION

**FRAZIER, Magistrate Judge:**

Before the Court are defense motions for summary judgment (Doc. Nos. 67, 71). In this civil rights action, plaintiff challenges the conditions of his confinement at Tamms Correctional Center between November, 2004, and December, 2006, under the United States Constitution (Count 1) and the Illinois Constitution (Count 2). In Count 1, plaintiff alleges that defendants Powers and Caliper responded with deliberate indifference to his serious medical need for treatment of symptoms of extreme, crippling joint pain. Plaintiff seeks damages and injunctive relief (Doc. No. 60).

### I.      Summary Judgment Standard

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The fact presented are construed in the light most favorable to the non-moving party and all reasonable and justifiable inferences are drawn in favor of that party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255

(1986). To survive a summary judgment motion, the opposing party must set forth specific facts showing that there is a genuine issue for trial. *Vanasco v. Nat'l-Louis Univ.*, 137 F.3d 962, 965 (7th Cir.1998).

## II. Serious Medical Need

Defendant Powers "denies" that plaintiff's arthritis constitutes a serious medical need. This position is considered as a challenge to evidence supporting the objective element of plaintiff's Eighth Amendment claim. Plaintiff responds that his condition qualifies as a serious medical need because it is extremely painful and has been diagnosed by physicians as a degenerative joint disease (Doc. No. 79).

In order to establish a violation of the Eighth Amendment in a § 1983 case involving medical care, plaintiff must satisfy an objective element by proving that he had a serious medical need. *Estelle v. Gamble*, 429 U.S. 97 (1976). A prisoner's medical need is objectively serious if it has been diagnosed by a physician as mandating treatment or is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997).

Construed in plaintiff's favor, deposition testimony, affidavits from inmates, and portions of the medical records could support a finding that plaintiff has experienced symptoms of severe pain related to a degenerative joint disease, which a lay person would recognize as needing a doctor's attention. Some evidence suggests that plaintiff's pain was so intense that it restricted his freedom of movement, brought tears to his eyes, and interfered with his ability to walk, especially when he attempted to negotiate stairs. His condition was evaluated by physicians, who felt further investigation was warranted. After x-rays and blood tests were ordered and evaluated, the

physicians diagnosed osteoarthritis, a degenerative joint disease. While the ailment was sometimes described as mild, the doctors offered medicine indicated for relief of pain and inflammation, including prescription strength medicine.

These materials could support a finding that plaintiff had a serious medical need for treatment of severe pain during the relevant time period. Defendant Powers is not entitled to judgment in his favor on the objective element of plaintiff's § 1983 claim.

### III. Personal Involvement

Both defendants challenge the sufficiency of evidence showing their involvement in plaintiff's medical care. Defendant Caliper points to evidence showing that plaintiff's condition was evaluated and treated by medical doctors. Caliper clarifies that she is a registered nurse and an administrator, not a physician. She was not qualified to diagnose plaintiff's medical problem or prescribe a course of treatment. Also, she had no authority to override physician decisions regarding plaintiff's diagnosis or treatment plan. She maintains that she was not personally involved in any medical decision regarding the treatment provided in response to plaintiff's symptoms.

Any award of damages under § 1983 must be based on evidence showing that both defendants were personally involved in a deprivation of plaintiff's Constitutional rights. *Reed v. McBride*, 178 F.3d 849, 852 (7th Cir. 1999).

A review of the file reveals no brief or argument opposing defendant Caliper's claim that she was not personally involved in any deprivation of medical care. Because plaintiff has not opposed the argument, it is deemed admitted. SDIL-LR7.1(c). Moreover, the evidence submitted permits only one reasonable inference: that staff medical doctors evaluated plaintiff's medical condition and made treatment decisions (Doc. No. 67-3 through 67-8). Absent evidence that Caliper directed,

authorized, approved, or otherwise participated in those treatment decisions, she could not be liable for damages caused by those decisions. Defendant Caliper is entitled to judgment in her favor on Count 1.

Defendant Powers targets the period between November, 2004, and March, 2005. He argues that he was not personally involved in plaintiff's medical care during this time span. Plaintiff responds to this argument by focusing on Powers' conduct between March and November, 2005 (Doc. No. 79). Because plaintiff points to no evidence suggesting that Powers was personally involved in treatment decisions prior to March, 2005, Powers' liability, if any, should be limited to injuries occurring after March 1, 2005.

### IV. Deliberate Indifference

The defendants also argue that the record could not support an inference of deliberate indifference. Plaintiff responds that defendant Powers' response to his symptoms qualifies as deliberate indifference in two ways. First, he says that Powers prescribed nonsteroidal anti-inflammatory drugs (NSAIDs) knowing that this type of drug therapy was not controlling his pain effectively. Second, he says Powers refused to prescribe any pain relief medicine between July and November, 2005, and offered poor advice to "let nature take its course" (Doc. No. 79).

A Constitutional deprivation occurs when a defendant demonstrates deliberate indifference to an inmate's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976). The defendant must be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw that inference. *Crowder v. True*, 74 F.3d. 812 (7th Cir. 1996), *quoting Farmer v. Brennan*, 114 S.Ct. 1970, 1979 (1994). Medical negligence does not suffice, and deliberate indifference will not be inferred from a difference of opinion regarding the

way in which a medical condition should be treated. *Garvin v. Armstrong*, 236 F.3d 896 (7th Cir. 2001). However, deliberate indifference may be inferred from proof that a medical professional's decision is such a substantial departure from accepted professional judgment, practice or standards as to demonstrate that the person responsible did not base the decision on such a judgment. *Estate of Cole by Pardue v. Fromm*, 94 F.3d 254, 261-62 (7th Cir. 1996). Deliberate indifference may also be proved by showing that the defendant ordered a certain kind of treatment knowing that it was ineffective. *Kelley v. McGinnis*, 899 F.2d 612, 616 (7th Cir.1990).

Between March 1, 2005, and July 5, 2006, plaintiff sought medical care on many occasions. Defendant Powers responded and regularly assessed plaintiff's subjective complaints; performed physical examinations; ordered and/or reviewed multiple radiology reports describing foot, knee, and hip x-rays; and ordered and/or reviewed multiple laboratory test results for the rheumatoid factor. He initially assessed degenerative changes in the hips consistent with arthritis and formulated a treatment plan to manage the disease with NSAID therapy. On two occasions in March, 2005, Dr. Powers prescribed Naprosyn, which is indicated for treatment of the signs and symptoms of osteoarthritis. *Physician's Desk Reference* 2762 (61st ed. 2007). Dr. Powers started with a dose of 500 milligrams, twice a day. He also issued orders allowing security staff to use an extra set of handcuffs, in order to allow plaintiff to avoid painful maneuvers.

In late March and early April, 2005, plaintiff told defendant Powers that NSAIDs and acetaminophen were not beneficial. Dr. Powers discontinued the NSAID therapy and declined to prescribe a different medicine, saying that nature would take its course because NSAID medicines are not perfect. At about the same time, Dr. Powers assessed plaintiff's degenerative joint disease

as "mild" and arranged for plaintiff to be admitted to the prison infirmary for observation.[1] During the four-day observation period, prescription strength pain medicine was not offered; however, acetaminophen was offered and used for pain relief.

Beginning on June 2, 2005, Dr. Power reevaluated plaintiff's condition and prescribed a different NSAID medicine (Motrin 600). On June 28 and July 11, 2005, Dr. Powers assessed subjective reports of global joint pain, reduced the dosage strength to Motrin 400, and ordered x-rays of plaintiff's hands and wrists. He reviewed the radiology report, which described no significant abnormality.

On August 30, 2005, Dr. Powers heard plaintiff describe pain and swelling in his joints. He walked away from plaintiff's cell, saying he did not know what was wrong.

Dr. Powers did not prescribe medication again until November 28, 2005, when he prescribed Motrin 800. Dr. Powers continued to follow plaintiff's condition and renewed the Motrin 800 prescription through December, 2006. In July, 2006, Powers suggested a special housing permit for a cell in a low gallery, which plaintiff refused.

---

Plaintiff argues that this evidence supports a finding that Dr. Powers maintained a course of treatment known to be ineffective. He claims that his symptoms never improved with NSAID therapy and reasons that Powers must have known NSAID therapy was ineffective. This theory lacks support in the medical evidence, which shows that Powers altered his initial treatment plan by switching from one type of NSAID (naproxen) to acetaminophen (Tylenol) based on plaintiff's report

---

[1] Dr. Powers was not the first doctor to treat plaintiff's condition with NSAID therapy. Dr. Chhabra prescribed NSAID therapy as well.

that NSAIDs were not beneficial. Later, Powers tried NSAID therapy again, using a different drug, and adjusting the dosage (Doc. No. 67-4, p. 11; 67-5, p. 1; 67-6, p. 22; 67-7, p. 2). Powers also assigned plaintiff to the infirmary for observation, suggested a low gallery cell assignment, and issued a permit for security officers to apply an extra set of handcuffs. Based on this record, no rational jury could conclude that Powers pursued a single form of treatment knowing it to be ineffective. Rather, Dr. Powers offered different forms of treatment, adjusted medication dose levels, and made other efforts to assess and ease symptoms.

Plaintiff also argues that Powers was deliberately indifferent when he failed to prescribe any medicine for pain relief between July and November, 2005, offering instead poor advice to "let nature take its course" (Doc. No. 79). Plaintiff believes Powers could have selected some type of drug therapy other than NSAID therapy. This argument reflects a disagreement about treatment and is not based on facts suggesting that any of Powers' treatment decisions substantially depart from accepted medical standards. Rather, the materials submitted show that Dr. Willard O. Elyea reviewed plaintiff's medical records in June, 2006, and determined that the medical care provided to plaintiff was "well within reasonable and acceptable standards" (Doc. No. 79-4, p. 18).

Because the evidence could not support a finding that Powers responded to plaintiff's medical needs in a manner amounting to deliberate indifference, judgment should be entered in Powers' favor on Count 1.

### V.     Qualified Immunity

The defendants also assert the affirmative defense of qualified immunity. Because their initial

arguments have merit, the affirmative defense is not considered at this time.

## VI. Eleventh Amendment

Defendant Caliper argues that any claim for damages asserted against her in her official capacity is barred by the Eleventh Amendment. This argument is unopposed and may be deemed admitted. To the extent that Count 1 seeks damages from defendant Caliper in her official capacity, that claim should be dismissed for failure to state a claim for relief. *Power v. Summers*, 226 F.3d 815, 818 (7th Cir. 2000).

## VII. Conclusion

IT IS RECOMMENDED that the defense motions for summary judgment (Doc. No. 67, 71) be GRANTED as follows. On Count 1, any official capacity claim against defendant Caliper should be dismissed. Judgment should be entered in favor of defendants Caliper and Powers on the individual capacity claims. If this recommendation is adopted, all federal claims will be resolved.

IT IS FURTHER RECOMMENDED that Count 2 be dismissed without prejudice to plaintiff's right to litigate his remaining state law claim in state court. Count 2 was added late in these proceedings and has not consumed substantial judicial resources. If the claims in Count 1 are resolved as recommended, no adequate ground exists to retain supplemental jurisdiction over Count 2.

SUBMITTED:  January 30, 2008 .

*s/Philip M. Frazier*
**PHILIP M. FRAZIER**
**UNITED STATES MAGISTRATE JUDGE**